Benjamin E. and Regine S. Levy v. Commissioner.
Levy v. Commissioner
Docket No. 107089.
United States Tax Court
1942 Tax Ct. Memo LEXIS 7; 1 T.C.M. (CCH) 316; T.C.M. (RIA) 42687; 12/29/1942
*7 Petitioner, Benjamin E. Levy, an individual citizen of the United States, was a nonresident of the United States during the taxable year 1938 for an aggregate of 200 days. Held, petitioner was "a bona fide nonresident of the United States for more than six months during the taxable year" as that phrase is used in section 116(a) of the Revenue Act of 1938. Michel J. A. Bertin, 1 T.C. 355, followed. Petitioner, Benjamin E. Levy, was the chief executive officer of an affiliated group of corporations consisting of an American corporation and several foreign subsidiaries. The principal amount of his compensation was paid by the American parent corporation. Some director's fees were received from two of the foreign subsidiaries. Held, the compensation paid petitioner was partly for services performed within the United States and partly without the United States, and in the absence of evidence permitting an accurate allocation or segregation of such compensation, the amount to be included in petitioner's gross income should be determined by an apportionment on the time basis as provided in Article 119-4 of Regulations 101. Ferdinand Tannenbaum, Esq., for the petitioners. *8 George R. Sheriff, Esq., for the respondent. Raymond F. Garrity, Esq., Amicus Curiae. BLACK Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax against petitioners for the calendar years 1938 and 1939 in the amounts of $7,162.13 and $326.08, respectively. The only taxes in controversy are those for the year 1938. In a statement attached to the deficiency notice the respondent made adjustments to the net income reported by petitioners in their joint income tax return for the year 1938 as follows: Net income as disclosed by return
$ 1,910.11
Unallowable deductions and additional income: (a) Compensation for services
$30,983.23
(b) Interest
900.00
31,883.23
Total
$33,793.34
Nontaxable income and additional deductions: (c) Contributions
$1,755.00
(d) Dividends
13.03
1,768.03
Net income adjusted
$32,025.31
Explanation of Adjustments (a) Compensation received from Coty. Inc. has been increased by the sum of $30,983.23, inasmuch as it is held that you are not entitled to exclude this amount of income from your return under the provisions of section 116(a) of the Revenue Act of 1938. Petitioners, by appropriate *9 assignments of error, contest only the adjustment relating to compensation for services. Findings of Fact Petitioners, who are husband and wife, filed their joint income tax return for the calendar year 1938 with the collector of internal revenue for the District of Maryland. In this return Benjamin E. Levy, sometimes referred to herein as petitioner, reported in Schedule A taxable compensation received from Coty, Inc. and affiliated corporations in the amount of $22,998.72; and in Schedule I nontaxable compensation received from the same source in the amount of $30,983.23, which he labeled "Salary earned outside of U.S. during more than 6 mos. of 1938." Petitioner was born at Reims, France, on December 8, 1878. His wife Regine S. Levy, was born at Lille (Nord) France. They came to the United States on August 15, 1907, and were naturalized as citizens of the United States on April 5, 1910. After entering the United States petitioner was employed for a few months as a salesman of powder puffs. Subsequently he manufactured powder puffs and later traveled for sundry druggist houses. In 1910 he became sole agent for the sale of Coty perfumes in the United States. At that time Francois *10 Coty, an individual, manufactured perfumery in France for sale in the United States. Until 1922, petitioner's income resulted from the purchase of Coty products in France and the sale thereof in the United States. In 1922 Coty organized Coty, Inc. under the laws of the State of Delaware and petitioner became a salaried employee of that corporation. In 1925 he became vice-president of Coty, Inc. From 1910 to 1925 he made business trips to Europe once or twice a year for conferences with Coty and other people. Coty, Inc. from the year 1929 through the taxable year owned half of the issued and outstanding stock of Coty, Ltd. of England. The other half of the capital stock of Coty, Ltd. of England during such period was owned by Coty, S.A. of France. Seventy-five per cent of the issued and outstanding stock of Coty, S.A. of France during such period was owned by Coty, Inc. The other twenty-five per cent was owned by the public. Coty, S.A. of France, owned all of the issued and outstanding stock of Coty corporations organized under the laws of Italy, Rumania, Switzerland, Brazil and the Argentine as well as other corporations organized under the laws of France. Coty in 1925 sold a large *11 block of his shares of Coty, Inc. to bankers who were anxious that the Coty business in France be carefully supervised to prevent its loss. It was understood that petitioner in the future would spend a good deal of his time in France, working with Coty and seeing that everything was going on all right. From 1925 to 1931, inclusive, petitioner spent about half of his time in the United States. From 1932 to July, 1934, petitioner was not actively connected with the Coty interests. In July, 1934, he became chairman of the board of Coty, Inc., Coty, S.A. of France, Coty, Ltd. and of other companies organized in Rumania, Italy and France. Petitioner's principal business ties from July, 1934, through the taxable year were with Coty, Inc. and its subsidiaries. It was petitioner's intention to physically reside wherever the necessities of that business dictated. While connected with that business he would have returned to the United States to reside continuously throughout the year if that were a business necessity. Petitioner, in the course of his employment, was absent from the United States for a period of 200 days during the taxable year 1938, the dates of his departures from, and *12 returns to, the United States being as follows: Days outside
Days inside
U.S.
U.S.
January
In Europe
31
February
Arrived U.S. 2/21/38
21
7
March
Left U.S. 3/31/38
31
April
In Europe
30
May
In Europe
31
June
Arrived U.S. 6/21/38
21
9
July
Left U.S. for Canada 7/14/38
14
Arrived U.S. 7/24/38
10
7
August
In U.S.
31
September
In U.S.
30
October
Left U.S. 10/6/38
25
6
November
Arrived U.S. 11/10/38
10
20
December
Left U.S. 12/10/38
21
10
Total
200
165
In 1924, petitioner purchased a residence at 90 Rue de Courcelles, Paris, France. The residence was three stories in height with large rooms and an office downstairs. He remodelled it during the year and it was ready for occupancy in 1925. This residence was not maintained as a convenience. His wife lived there nine months out of the year, and her health was improved while she resided in France. In 1938 she only accompanied the petitioner once in the summertime on a trip to the United States. Petitioner contemplated that some day he would retire from business. He bought the residence in France so that he and his wife could reside in France when he retired. As a native of *13 France, he intended to make that country his home after he retired. Petitioner still maintains his house in Paris and pays his servants. He maintains safe deposit vaults in France where his furniture is stored in order to protect it from bombing. Petitioner Regine S. Levy owned an empty house at 21 Pryer Lane, Larchmont, N.Y. Petitioner Benjamin E. Levy has been trying to sell that house since 1925. In connection with their passport applications and registration abroad, and in order to retain their status as American citizens and rebut any presumption of expatriation as citizens of the United States, both petitioners, at various times in 1937 and 1939, represented to the officials of the Department of State that their legal residence was in the United States, that they were living abroad only as the husband's business required, that his principal business ties were in the United States, and that they intended to return to reside permanently in the United States "when recalled by Coty, Inc." Petitioner Benjamin E. Levy maintained bank accounts in the Fifth Avenue Bank and the Manhattan Trust Company of New York City. Petitioner, when he came to the United States during the years *14 1925 to 1939, made customs declarations in which he stated he was a nonresident of the United States and lived at 90 Rue de Courcelles, Paris, France. He registered with the Police of Paris during such years, stating his residence as No. 90 Rue de Courcelles. On May 26, 1937, petitioner Benjamin E. Levy received from the American Consul in Paris, France, a passport which gave his residence as 90 Rue de Courcelles, Paris, France. This passport was in effect in the year 1938. From July, 1934, to 1939, petitioner was the responsible business head of Coty, Inc. and its subsidiaries. He was the chief executive of the group. He had responsibilities both in Europe and in the United States. It was necessary for petitioner to be in Europe in connection with the Coty affairs because it was a part of his duty assigned to him by the board of directors of Coty, Inc. During the time petitioner was in Europe in 1938, he regularly received weekly letters from Coty, Inc. which he would answer often in the form of instructions as to what to do with specific problems. During the year 1938, petitioner drew as compensation in the form of director's fees from the English company $3,567.72 and from the *15 French company $1,944.23. He received no other salary from these subsidiaries. During the year 1938, petitioner received from Coty, Inc. for services rendered compensation in the total amount of $48,470. Part of this compensation was for looking after the business of the European companies. Of the total amount of $53,981.95 received from Coty, Inc., the English company and the French company, petitioner reported $22,998.72 as compensation paid him for services performed in the United States and reported $30,983.23 as being received from sources without the United States and exempt from taxation under section 116(a) of the Revenue Act of 1938. The respondent determined that no part of the total compensation of $53,981.95 was exempt from taxation under that section of the statute. Petitioner was a bona fide nonresident of the United States for more than six months during the taxable year. Opinion BLACK, Judge: The question in this proceeding is whether petitioner Benjamin E. Levy is entitled to the benefit of section 116(a) of the Revenue Act of 1938. [1] In his brief counsel for the respondent makes this statement: To receive the benefits of Section 116(a), four concurrent elements *16 must exist. Absence of any one is fatal to the exemption. These elements are (1) taxpayer must be an individual citizen of the United States, (2) a bona fide nonresident of the United States for more than six months during the taxable year, (3) the income must be received from sources without the United States, and (4) it must constitute earned income for personal services rendered. In the present case petitioner was not a bona fide nonresident for more than six months, and the income was not from sources without the United States. *17 Petitioner Benjamin E. Levy was an individual citizen of the United States, and from the above quoted statement we assume that the respondent concedes that the income sought to be excluded from gross income "would constitute earned income as defined in section 25(a) if received from sources within the United States." That leaves for our determination whether the so-called elements (2) and (3), as outlined in the above quoted statement by the respondent, are present in this proceeding. In determining whether petitioner was a nonresident for "more than six months" the respondent contends that the rule as laid down in G.C.M. 22065, Cumulative Bulletin 1940-1, page 100 is controlling, and that in applying that rule petitioner, although absent from the United States during the taxable year for an aggregate of 200 days was only absent for four calendar months, computed as follows: Jan. 1 to Feb. 21
1 calendar month
Mar. 31 to June 21
2 calendar months
July 14 to July 24
disregarded
Oct. 6 to Nov. 10
1 calendar month
Dec. 10 to Dec. 31
disregarded
Total
4 calendar months
In Michel J. A. Bertin, 1 T.C. 355, *18 the petitioner there was an individual citizen of the United States and a nonresident thereof during three trips abroad, totaling 186 days, in 1939. We held in that case that Bertin was a "bona fide nonresident of the United States for more than six months during the taxable year" and that in computing the time of nonresidence fractional parts of months may not be disregarded. Upon the authority of that case we hold in the instant case that petitioner was a bona fide nonresident of the United States for more than six months during the taxable year. We must now determine whether the $30,983.23 in question was "received from sources without the United States." Section 119(c) of the Revenue Act of 1938 provides in part: (c) Gross Income From Sources Without United States. - The following items of gross income shall be treated as income from sources without the United States: * * *
(3) Compensation for labor or personal services performed without the United States; Article 119-7 of Regulations 101 provides in part that for the treatment of compensation for labor or personal services "performed partly within the United States and partly without the United States" see Article 119-4. *19 The material portion of this article is as follows: Art. 119-4. Compensation for labor or personal services. - * * * If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or services performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis, i.e., there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. The respondent contends that while petitioner was abroad he was engaged only in the business of the foreign subsidiaries of Coty, Inc. and performed no substantial services for the parent company except to answer a weekly letter from that company; that the best that could possibly be said on behalf of petitioner is that the income received from Coty, Inc. was partly from sources within and partly from sources without the United States; but that *20 petitioner, upon whom rested the burden of proof, has not shown any basis upon which a proper allocation or apportionment could be based, and that for this reason alone the exemption must be denied. We do not think there is any merit in the respondent's contention. We think petitioner has proven all that is required. He has shown that during the taxable year he was the chief executive officer of Coty, Inc.; that that company owned a large portion of the stock of certain European companies; that petitioner was sent abroad by Coty, Inc. to look after its foreign holdings; that in obedience to such orders petitioner was outside of the United States for an aggregate of 200 days during the taxable year; that he was within the United States for an aggregate of 165 days; and that for his entire services during the taxable year Coty, Inc. and two of its foreign subsidiaries paid him the amount of $53,981.95. The respondent emphasizes as detrimental to the petitioner the fact that while abroad petitioner performed services for the foreign subsidiaries. It is undoubtedly true that while abroad petitioner performed certain services for these foreign subsidiaries, but in so doing he was merely *21 executing a part of the duties he was employed by Coty, Inc. to perform. As we have already pointed out, he was the chief executive officer of all the corporations and in such capacity seeking to advance their business interests. The respondent has consistently ruled that in determining whether compensation is from sources without the United States, the place where the services are performed is the controlling factor. See S.M. 5446, Cumulative Bulletin V-1, p. 49; I.T. 2286, C.B. V-1, p. 52; and I.T. 2293, C.B. V-2, p. 33. This is in accord with section 119(c) (3), supra. The place where petitioner performed his services for Coty, Inc. was partly within and partly without the United States. In the absence of evidence permitting an accurate allocation or segregation of compensation received for such services, "the amount to be included in the gross income shall be determined by an apportionment on the time basis." Art. 119-4, supra. Petitioner makes no contention that the place where he performed his services for the foreign subsidiaries for which he received director's fees in the total amount of $5,511.95 ($3,567.72 plus $1,944.23) was wholly without *22 the United States and that this entire amount should be excluded from his income as well as 200/365ths of $48,470, which he received in 1938 from Coty, Inc., but merely contends that there should be excluded from income under section 116(a), supra, 200/365ths of the total compensation received from all sources in the aggregate amount of $53,981.95. It may well be that these director's fees received from the foreign subsidiaries represented "Compensation for labor or personal services performed without the United States" as that phrase is used in section 119(c) (3), supra, and entire amount received therefor, $5,511.95 should be excluded but since petitioner is making no such claim in this proceeding, we need not decide that point. We hold, therefore, as petitioner contends, that 200/365ths of the total compensation received from Coty, Inc. and its subsidiaries in the aggregate amount of $53,981.95 represents compensations for labor or personal services performed without the United States and is exempt from taxation under section 116(a), supra. Michel J. A. Bertin, supra.
Decision will be entered under Rule 50. Footnotes
1. SEC. 116. EXCLUSIONS FROM GROSS INCOME. In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this title: (a) Earned Income From Sources Without United States. - In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.↩